UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANNA M. HARVEY, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00870-MJD-WTL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

## Order

Plaintiff Anna M. Harvey ("Harvey") requests judicial review of the Social Security Administration ("SSA") Commissioner Michael J. Astrue's ("Commissioner") final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c. For the reasons set forth, the Court **AFFIRMS** the Commissioner's final decision denying benefits before December 17, 2009.

## I. Background

**A. Procedural History**

On December 19, 2007, Harvey applied for SSI, alleging disability beginning on June 1, 2007. The SSA initially denied her application on August 30, 2007, and upon reconsideration. Thereafter, Harvey requested a hearing, which Administrative Law Judge Michael Scurry ("ALJ") held on July 21, 2010. On August 6, 2010, the ALJ found Harvey disabled as of December 17, 2009, but not disabled prior to that date. Harvey then requested review of the ALJ's decision by the Appeals Council. On May 19, 2011, the Appeals Council affirmed the

1

ALJ's decision, making the ALJ's decision the final decision of the SSA. On June 29, 2011, Harvey filed this timely appeal requesting review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**B. Factual Background**

At the time of the ALJ's decision, Harvey was forty-nine years old and had a ninth grade education. Harvey last worked in 2000. Harvey alleges she is disabled because of circulation problems and because her left foot was amputated.

   **1. Treating Physicians**

In August 2007, Harvey stepped on a coat hanger, which punctured her left foot. As a result, Harvey developed large non-healing ulcers on her left foot. Despite treatment over the course of three months, Harvey developed gangrene and on December 12, 2007 underwent a below the knee amputation.

On January 4, 2008, Harvey saw vascular surgeon Dr. Deepak Guttikonda for a follow-up visit. Dr. Guttikonda reported that Harvey's incision site was viable and intact. Dr. Guttinkonda removed Harvey's staples and stated that Harvey would be referred for a prosthetic placement in the near future. Additionally, Dr. Guttikonda noted that Harvey has known arterial insufficiency in her right side without any significant symptoms, but Dr. Guttikonda noted that it would need to be monitored.

On June 23, 2008, Harvey saw Dr. Guttinkonda for another routine follow-up visit. At that time, Dr. Guttinkonda reported that Harvey was "doing well." [R. 364.] Harvey denied any symptoms of pain in either her left or right leg. Dr. Guttinkonda strongly recommended that Harvey stop smoking, suggesting to Harvey that her peripheral vascular disease in her right leg

would worsen if she continued smoking. Dr. Guttinkonda again noted that Harvey would be referred for a possible prosthesis.

After the visit on June 23, 2008, there is no record of Harvey seeking any medical treatment until June 15, 2009, when a carotid duplex test was performed, which showed evidence of bilateral mild to moderate carotid artery disease. On December 11, 2009, Harvey again sought treatment from Dr. Guttikonda for a gangrenous right big toe. Apparently, Harvey injured her toe a couple of weeks before and reported being in constant pain. Dr. Guttikonda later amputated Harvey's big toe on December 17, 2009.

### 2. State Agency Examining and Reviewing Physicians

On March 15, 2008, on behalf of the Disability Determination Bureau ("DDB"), Dr. Mahmoud Yassin Kassab performed a consultative examination of Harvey. Dr. Kassab noted that Harvey had above the ankle amputation on her left foot, status post severe peripheral vascular disease and complications. Dr. Kassab found that Harvey was able to grasp, lift, carry and manipulate objects in both hands. Dr. Kassab also found that Harvey could perform repeated movements with her right foot, and bend over without restriction, but had difficulty squatting because of her left foot amputation.

At the examination, Harvey denied having a history of pain or any stump infection. Dr. Kassab reported that Harvey had finished her physical therapy and was using a walker and a wheelchair at home. Harvey indicated that she could walk approximately one block using her walker, but could not take one step without her walker. Dr. Kassab stated that Harvey's use of the walker was medically necessary at that time.

On April 3, 2008, Dr. M. Brill reviewed Harvey's claim file and completed a Physical Residual Functional Capacity Assessment form, indicating that Harvey could occasionally lift up

to twenty pounds, could frequently lift up to ten pounds, could stand and/or walk for a total of two hours in an eight hour workday, could sit about six hours in an eight hour workday, and could push and/or pull.  Dr. Brill indicated that, with the use of a prosthesis, Harvey could perform at least sedentary work.

## II. Disability and Standard of Review

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities) that meets the duration requirement, she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v). The claimant has the burden of proof for the first four steps, with the burden shifting to the Commissioner for step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, …or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his

acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. The ALJ's Decision

At step one, the ALJ found that Harvey had not engaged in substantial gainful activity since the alleged onset date. [R. 13.] At step two, the ALJ made two findings regarding Harvey's severe impairments. First, the ALJ found that since the alleged onset date of June 1, 2007, Harvey had the following severe impairments: history of peripheral vascular disease with a left foot nonhealing ulcer, status post left below-knee amputation. [*Id.*] Second, the ALJ found that since the established onset date of disability, December 17, 2009, Harvey had the following severe impairments: right big toe gangrene and amputation at MP joint; distal SFA occlusion on the left foot and right occlusion at ankle and peroneal artery. [*Id.*] At step three, the ALJ found that prior to December 17, 2009, Harvey did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1. [*Id.* at 14.]

Next, the ALJ found that Harvey had the RFC to perform light work as defined in the regulations, except Harvey could occasionally lift twenty pounds and could frequently lift ten pounds. The ALJ found that Harvey could stand and/or walk at least two hours and sit about six hours in an eight hour workday; she could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs; she could occasionally balance, stoop, kneel, crouch and crawl; and she should avoid concentrated exposure to wetness and hazards such as machinery and heights. [*Id.*] Moving on to step four, the ALJ found that Harvey could not perform her past relevant work since June 1, 2007. [*Id.* at 17.] At step five, the ALJ found that, prior to December 17, 2009, Harvey could perform a significant number of jobs that exist in the national

economy, including occupations such as a hand packer, production worker, and surveillance system monitor.  [*Id.* at 18.]  As such, the ALJ found that Harvey was not disabled before December 17, 2009.  [*Id.*]  Beginning December 17, 2009, the ALJ found that Harvey met a listing impairment and therefore was disabled.  [*Id.* at 18-19.]

## IV. Discussion

At issue is whether Harvey was disabled prior to December 17, 2009, the date the ALJ determined that Harvey met a listing impairment.  Harvey argues that she was disabled prior to that date and that she presented evidence to demonstrate that the proper onset date was October or November 2007.  [Dkt. 30 at 3.]  Specifically, Harvey first argues that the ALJ's decision is contrary to Social Security Ruling ("SSR") 83-20 and not supported by substantial evidence.  Next, Harvey claims that the ALJ failed to summon a medical advisor, ignored or rejected medical evidence, and substituted his opinion for the opinions of Harvey's treating and examining physicians.  Harvey also argues that the ALJ's credibility determination was patently erroneous because it was contrary to SSR 96-7p.  Lastly, Harvey argues that the ALJ's step five determination was erroneous. The Court will address Harvey's arguments in turn.

1.  **Evidence Of Disability And SSR 83-20**

Harvey argues that, under SSR 83-20, the ALJ was required to determine that Harvey's disability onset date occurred before December 17, 2009.  SSR 83-20 contains the following policy statement regarding the onset date of disability:

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20. According to Harvey, two of the relevant factors—Harvey's allegation and the medical evidence—support an earlier onset date. With regard to Harvey's allegation, the ALJ found her not credible and the Court will address the ALJ's credibility determination later in its opinion.

With regard to the medical evidence, which, under SSR 83-20, is the primary element in the onset determination, Harvey initially argues that she met both listing 4.11 and listing 4.12. In her Reply, however, Harvey takes a contrary position arguing that the "ALJ's determination that she became disabled as of December 17, 2009 under Listing 4.11B is contrary to the evidence and is plainly erroneous because he chose the wrong Listing." [Dkt. 30 at 3-4.] Harvey then focuses her argument solely on listing 4.12A, which is the listing for "peripheral arterial disease … causing intermittent claudication … and one of the following: A. [r]esting ankle/brachial systolic blood pressure ratio of less than 0.50 …." 20 C.F.R. 404, subpart P, Appendix 1. Harvey points to medical evidence that she maintains demonstrates that she had peripheral arterial disease with claudication and a resting ankle/brachial systolic blood pressure of 0.49 on her left side prior to her below the knee amputation. [R. 253-54; R. 327.]

The Commissioner argues that Harvey's "discussion of pre-amputation evidence does not in any way demonstrate that her condition met or equaled a listing," because by June 2008 Harvey had recovered and therefore fails to satisfy the twelve-month duration requirement. [Dkt. 27 at 8.] The Commissioner goes on to argue that Harvey had the burden of proof that she met or equaled a listing, including the duration requirement and did not meet her burden.

The Court agrees with the Commissioner. Under 20 C.F.R. § 416.920(a)(4)(iii), the burden is on Harvey to establish that she has a severe medically determinable impairment meeting the duration requirement in 20 C.F.R. § 416.909, which requires that the impairment

8

"must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R § 416.909; *see also Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing.").

Harvey fails to respond to the Commissioner's argument regarding the duration requirement, but nevertheless maintains that she met listing 4.12 in October or November 2007. Even assuming Harvey met listing 4.12 in October or November 2007, she must still present evidence that her impairment lasted for a continuous period of at least 12 months. 20 C.F.R. § 416.909. Harvey's below the knee amputation effectively resolved her peripheral arterial disease in her left leg and by all accounts, as of June 23, 2008, her amputation had healed and Harvey was doing well.[1] [R. 364.] At the hearing, the ALJ pointed out that between June 23, 2008 and December 29, 2009, very few medical records existed and questioned whether Harvey wanted to amend her onset date. [R. 32.] Harvey declined to amend her onset date, contending that she has been disabled since September 2007. [R. 33.] It is Harvey's burden to present evidence, however, that demonstrates any impairment she might have had lasted or was expected to last for a period of 12 continuous months. Harvey had failed to meet her burden.

## 2. Failure To Summon A Medical Advisor

Next, Harvey argues that the ALJ failed to summon a medical advisor to determine medical equivalence, ignored or rejected evidence proving disability, and substituted his opinions for Harvey's physicians' opinions. Under Social Security Ruling ("SSR") 96-6p, a signature of a state agency medical or psychological consultant on a Disability Determination

---

[1] Nor is there any indication in the record that Harvey's peripheral arterial disease impacted her right leg to the point that Harvey met listing 4.12. It was not until December 11, 2009, when Harvey saw Dr. Guttikonda for her gangrenous right big toe, that there is any indication of significant problems in her right leg. [R. 368.]

and Transmittal ("DDT") form "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96–6p.  Here, the Commissioner points to two DDT forms completed by Dr. Brill and Dr. Whitley, finding Harvey not disabled.  [R. 53; R. 54.]

In Reply, Harvey argues that the DDT forms were based upon less than all of the evidence in the record, because the forms were completed on April 14, 2008 and May 14, 2008, more than two years before the ALJ's decision.  According to Harvey, the opinions in the DDT forms were incomplete because they did not consider evidence from December 11, 2009 and January 22, 2010, "which proved a worsening of the claimant's peripheral arterial disease resulting in further amputation and reporting her medical inability to use a prosthetic device to ambulate effectively, relevant to Listing 1.05/1.002b."  [Dkt. 30 at 5.]

While the DDT forms were completed two years before the ALJ's decision, the DDT forms were completed during the time period at issue in this case, *i.e.*, the time between the alleged onset date in October or November 2007 and the onset date of December 17, 2009 established by the ALJ.  Moreover, the evidence in 2009 and 2010—that Harvey argues was not considered and proved her peripheral arterial disease was worsening—was the evidence the ALJ considered in establishing Harvey's onset date of December 17, 2009.  There is no dispute that in December 2009, Harvey's impairment worsened.  Rather, the question is whether Harvey became disabled sometime prior to December 17, 2009.  The DDT forms directly address this question. Thus, contrary to Harvey's argument, the ALJ's reliance upon the DDT forms was proper and the ALJ was not required to summon a medical advisor.

### 3. Credibility Determination

Next, Harvey argues that the ALJ's credibility determination is contrary to SSR 96-7p. Under SSR 96-7p, the ALJ should consider the following factors: (1) the claimant's daily activities; (2) the location, duration, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, that the claimant receives for relief of pain or other symptoms; (6) any other measures used to relieve pain or symptoms; (7) and any other factors concerning the claimant's limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). According to Harvey, the ALJ failed to consider the second factor because the ALJ refused to accept medical evidence—a Doppler evaluation done before the left leg amputation—that proved Harvey was disabled because her impairments met a listing impairment, thereby corroborating her allegations of disability. [Dkt. 20 at 22.]

The ALJ's credibility determination, however, focused on Harvey's statements about the intensity, persistence, and limiting effects of her pain or other symptoms **after** her left leg amputation. The ALJ acknowledged and discussed the fact that Harvey had an ulcer on her left foot that ended up requiring her foot to be amputated. [R. 15.] The medical evidence that Harvey cited to only demonstrates that she had vascular problems on her left side, which eventually necessitated the amputation on her left side. Thus, the medical evidence **before** the amputation could not corroborate Harvey's allegations as to the second factor—the location, duration, and intensity of Harvey's pain or other symptoms **after** her amputation.

With regard to Harvey's allegations after the amputation, the ALJ found that Harvey was not as limited as she alleged. [R. 16.] In so finding, the ALJ provided a thorough discussion as to his reasoning. Notably, the ALJ found not credible Harvey's statement that she could not wear

11

her prosthesis because it did not fit properly resulting in blisters, because Harvey made inconsistent statements regarding her prosthesis and because no objective medical evidence supported Harvey's statement.[2] [R. 16.] In reviewing the ALJ's credibility determination, the Court finds nothing patently wrong with the ALJ's credibility determination. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).

### 4. The ALJ's Step Five Determination

Harvey's last argument, in its entirety, reads:

> The ALJ's residual functional capacity (R. 14) omits the fact that her combined impairments met the requirements for Listings 4.11/4.12 as of 10-29-07 (R. 237) and thus was totally disabled as of that date. Remand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that she is not disabled.

[R. 20 at 24 (citations omitted).] Contrary to Harvey's argument, the ALJ did consider Harvey's documented impairments. In determining Harvey's RFC, the ALJ found that Harvey had a "history of peripheral vascular disease with a left foot non-healing ulcer, and status post left below-knee amputation." [R. 17.] There is no indication in medical records that, after her amputation, Harvey had any significant symptoms resulting from peripheral vascular disease until December 2009.[3] Thus, the ALJ did not err in determining Harvey's RFC and did not err in

---

[2] Harvey references listings 1.05B and 1.00B2b regarding her inability to use a prosthetic device to ambulate effectively, but never develops an argument that she met the listings. As such, the Court finds that, to the extent Harvey was attempting to argue she met these listings, she has waived the argument. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (finding that undeveloped and unsupported arguments are waived). Harvey likely does not develop the argument that she met these listings, because no evidence exists to support the argument. Harvey was referred for the prosthesis at some point after June 2008, but there are virtually no medical records after June 2008 until December 2009. Harvey's own statements are the only evidence of her inability to ambulate effectively and the ALJ found those statements not credible, in part, because of inconsistencies in those statements.

[3] As noted earlier, Harvey unequivocally argues in her Reply that the ALJ chose the wrong Listing in finding her disabled under listing 4.11, because she did not have all of the symptoms for listing 4.11. [Dkt. 30 at 3-4.] Thus, the Court considers Harvey's argument that she met listing 4.11 abandoned and focuses only on her argument that she met listing 4.12.

determining that, based upon this RFC, Harvey could perform work that existed in significant numbers in the national economy.

## V. Conclusion

For the above stated reasons, the Court hereby **AFFIRMS** the Commissioner's decision denying disability benefits before December 17, 2009.

Dated:   08/23/2012

Distribution:

All Electronically Registered Counsel

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

13